UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| JENIFFER S.-M., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-734-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |
| | § | |

## INTRODUCTION

Plaintiff Jeniffer S.-M. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for disability insurance benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 10. Plaintiff also filed a reply. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion (ECF No. 8) is **GRANTED IN PART**, the Commissioner's motion (ECF No. 10) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings.

## BACKGROUND

Plaintiff protectively filed her DIB and SSI applications on December 7, 2017, alleging disability beginning March 1, 2017 (the disability onset date) due to "1) fibromylasia [*sic*]; 2) mellitus diabetes [*sic*]; and 3) obesity." Transcript ("Tr.") 17, 100, 101, 306. Plaintiff's

applications were denied initially on May 7, 2018, after which she requested an administrative hearing. Tr. 102-09, 110-12. She attended a series of four hearing sessions before Administrative Law Judge P. H. Jung ("the ALJ). Tr. 35-47, 48-60, 61-73. Plaintiff was unrepresented at all hearing sessions. *See, e.g.*, Tr. 35, 48, 61, 70-71.

On February 24, 2020, the ALJ conducted a video hearing from Kansas City, Missouri. Plaintiff appeared and testified from Buffalo, New York, with assistance from a Spanish language interpreter. Although informed of her right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative. The ALJ continued the hearing to obtain recent treatment records, and also gave Plaintiff an opportunity to look for a representative. Tr. 17.

On July 13, 2020, the ALJ held a telephonic hearing, at which all participants attended by telephone due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19)" Pandemic. Plaintiff attended with assistance from a Spanish language interpreter and again chose to appear and testify without the assistance of an attorney or other representative. The ALJ continued the hearing to obtain a response to medical interrogatory. Tr. 17.

On October 5, 2020, the ALJ held a supplemental telephonic hearing, at which all participants attended by telephone again due to the extraordinary circumstance presented by the COVID-19 Pandemic. Plaintiff appeared with assistance from a Spanish language and again chose to appear and testify without representation. Denise Waddell, an impartial vocational expert, also appeared and testified.

Due to recording problems from the hearing held on October 5, 2020, another supplemental telephonic hearing was held on November 4, 2020. Plaintiff appeared and testified with assistance

from a Spanish language interpreter and again chose to appear and testify without representation. Terri Crawford, an impartial vocational expert, also appeared and testified. Tr. 17.

The ALJ issued an unfavorable decision on November 10, 2020, finding that Plaintiff was not disabled. Tr. 17-29. On May 13, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-3. The ALJ's November 10, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his November 10, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2022.

2. The claimant has not engaged in substantial gainful activity since March 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: diabetes mellitus; obesity; fibromyalgia; lumbar disorder; and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[1] except never climb ladders, ropes, or scaffolds; occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl; must avoid frequent exposure to extreme cold, wetness, vibration, hazards, machinery, and such heights; and limited to simple, repetitive, routine tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 7, 1976, and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

---

[1] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 17-28.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on November 6, 2017, the claimant is not disabled under sections 216(i) and 223(d) of the Act. Tr. 29. The ALJ also determined that, based on the application for supplemental security income protectively filed on November 6, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. *Id*.

## <u>ANALYSIS</u>

Plaintiff asserts two points of error, both of which challenge the ALJ's RFC findings because they were not based on a matching medical opinion. Plaintiff first argues that the ALJ's evaluation of her mental RFC was not supported because the ALJ relied on no opinion evidence. *See* ECF No. 8-1 at 9-16. Second, Plaintiff argues that the ALJ erred by making a "highly specific" physical RFC finding based only on the consultative opinion of Nikita Dave, M.D. ("Dr. Dave"). *See id*. at 17-19. Plaintiff takes issue with the ALJ's finding of additional limitations beyond those assessed by Dr. Dave, and also argues that the opinion was stale. *See id*.

The Commissioner argues in response that the ALJ sufficiently supported the RFC finding with substantial evidence, including the opinion evidence, Plaintiff's treatment records, and her statements about her symptoms and daily activities. *See* ECF No. 10-1 at 11-14. The Commissioner also argues that the ALJ considered the medical source opinions, and his RFC finding appropriately reflected the portions that were supported and/or consistent with the record as a whole. *See id*. at 12-22.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v.*

*Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record, the Court finds that the ALJ properly considered the evidence regarding Plaintiff's physical impairments, and his determination that Plaintiff retained the RFC to perform sedentary work with additional environmental and postural restrictions was supported by substantial evidence, including the medical treatment notes, Plaintiff's stated activities of daily living, and, to some extent, Dr. Dave's opinion. The ALJ properly relied on multiple evidentiary sources to arrive at the physical RFC finding and was not required to base the physical RFC finding directly on any one medical opinion.

However, the Court finds merit in Plaintiff's argument that the record lacked sufficient evidence to support the ALJ's mental RFC finding. As discussed further below, the ALJ rejected all of the opinion evidence regarding Plaintiff's mental functioning and appeared to craft a mental RFC largely based on his own lay interpretation of the medical findings. Because there was no competent medical opinion supporting the mental RFC finding, there is reasonable basis for doubt as to whether the ALJ's determination that Plaintiff was capable of sedentary work with a limitation to only simple, repetitive tasks was supported by substantial evidence. Tr. 22. Accordingly, remand is warranted on this point.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20

C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and

synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed her claim on December 7, 2017, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Plaintiff argues that the ALJ erred because he found Dr. Dave's opinion "generally persuasive," but then assessed additional limitations beyond those assessed in Dr. Dave's opinion. *See id*. ECF 8-1 at 16-19. Plaintiff also complains that Dr. Dave's opinion was stale because it predated Plaintiff's two varicose vein surgeries in May 2018 and August 2018, and an ultrasound in February 2019 showing hepatomegaly with fatty infiltration. *See id*. at 18 (citing Tr. 566-75, 630-31, 664-74).

Contrary to Plaintiff's argument, the ALJ thoroughly considered the entire record and properly considered Plaintiff's physical abilities and impairments to make a physical RFC finding that properly accounted for all of Plaintiff's credible limitations, as supported by the record. First, the ALJ noted that, despite Plaintiff's March 2017 alleged onset date, the earliest treatment of

record was an October 2017 letter from a primary care provider stating that Plaintiff was diagnosed with diabetes mellitus, fibromyalgia, and obesity. Tr. 23, 402. The letter further stated that Plaintiff's conditions were under control at that time; her diabetes and fibromyalgia were controlled with medication, and she exercised and followed a diabetic diet to control her diabetes and obesity. *Id.*

On December 4, 2017, Plaintiff initiated care at UBMD Family Medicine. Tr. 409-12. She reported she had recently moved to Buffalo after losing everything in a hurricane in Puerto Rico. Tr. 409. Lisa Porter, P.A. ("Ms. Porter"), affirmed the diagnoses stated in the above-referenced letter; noted Plaintiff's history of depression; and observed severe varicose veins in both legs. Tr. 406-12. However, Ms. Porter found Plaintiff's diabetes to be uncontrolled and instructed Plaintiff to test her blood sugar two to three times daily and to continue her medications. Tr. 408, 412.

The ALJ also noted that Plaintiff was evaluated by Dr. Dave for a consultative internal medicine examination in January 2018. Tr. 23, 426-30. Dr. Dave noted that Plaintiff's diabetes was not well controlled at the time. Tr. 23, 426. On examination, Dr. Dave noted severe obesity, a slow gait, reduced and painful lumbar range of motion, ten symmetric tender points, and diminished sensation in both lower extremities, as well as marked varicose veins in both legs, right more than left. Tr. 23, 429. Dr. Dave also observed full strength in the upper and lower extremities, intact hand and finger dexterity, and normal deep tendon reflexes. Tr. 23, 428-29. Plaintiff could walk on heels and toes without difficulty; get on and off the exam table independently; and rise from a chair without difficulty. Tr. 23, 427.

As the ALJ noted, over the next year, Plaintiff underwent surgery on both legs to treat her varicose veins, which reduced her fibromyalgia-related leg pain. Tr. 23, 664, 678. At a preoperative visit for her first surgery on May 8, 2018, Plaintiff reported her baseline pain level was 5/10, but

her pain that day was 8/10 pain because she had walked to the appointment. Tr. 680. She also reported a burning sensation in her right leg, but she stated that she had no difficulty walking up two flights of stairs and could independently perform activities of daily living. *Id*. As the ALJ noted, at an annual physical in December 2018, Plaintiff was observed with full muscle strength bilaterally in the upper and lower extremities, and without gross motor or sensory deficits. Tr. 23, 614.

The ALJ also noted that Plaintiff complained of mild lower back pain in October 2018, for which she was prescribed naproxen. Tr. 23. 635, 633. On April 19, 2019, Plaintiff was treated at the Emergency Department ("ED") for lower back pain. Tr. 23, 619. However, as the ALJ noted, a physical examination at that time showed normal musculoskeletal range of motion and a normal neurological examination. Tr. 23, 619, 621. Physical examinations from October through December 2019, and in January and February 2020, similarly showed full strength and range of motion of the spine, as well as stable legs (with the exception of noted instability in the knees in December 2019), and no edema in either leg. Tr. 23, 449, 453, 458, 463, 468. On January 5, 2020, Plaintiff presented to the ED with complaints of bilateral knee pain and flank pain; however, these symptoms were not corroborated by objective evidence; on examination, as Plaintiff had a steady gait; intact range of motion in all extremities; and a CT scan of the abdomen, pelvis, and lumbar spine showed a non-obstructed ventral hernia but no other acute findings. Tr. 23-24, 424-25, 729, 731.

The ALJ also noted that Plaintiff was classified as morbidly obese[2] during the relevant period, with a body mass index ("BMI") ranging from 41.4 in December 2017 to 43.6 in February 2020. Tr. 24, 410, 448. Plaintiff was engaged in a program of diet modification and exercise, with

---

[2] As the ALJ noted, obesity is generally defined as a BMI of 30.0 or greater. Tr. 24 (citing SSR 19-2P).

the goal of losing enough weight (13 pounds) to undergo gastric bypass surgery. Tr. 24, 590. The ALJ noted that a bariatric visit from July 2019 stated that Plaintiff was walking 30 minutes daily (Tr. 588), and on examination, Plaintiff displayed normal gait; no musculoskeletal or lower extremity tenderness; and no evidence of any specific or quantifiable limitations on mobility, pulmonary functioning, or cardiac functioning due to her body habitus (Tr. 590). Tr. 24. Thus, the ALJ reasonably noted that, despite Plaintiff's obesity, there was "no evidence of any specific or quantifiable impact on pulmonary, cardiac functioning, or significant limitations of movement attributable to the claimant's body habitus." Tr. 24. The ALJ also explained that, in assessing Plaintiff's RFC, he considered the effects of obesity as required under SSR 19-2p. Tr. 24; *see* SSR 19-2p (obesity); SSR 14-2p (diabetes).

In addition to the above evidence, the ALJ noted Plaintiff's statements regarding her abilities to perform activities of daily living, Tr. 24; *see* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The ALJ noted that Plaintiff stated she could perform tasks that were inconsistent with the alleged severity of her impairments. Tr. 24, Plaintiff reported that she performed personal care, did household chores, cooked daily, and went shopping (although sometimes with help from her children). Tr. 24, 422. She was also able to take public transportation and spend time on weekends with her family. *Id*. As the ALJ noted, the physical capabilities required to perform these activities supported the RFC finding. Tr. 24.

After completing Plaintiff's consultative examination, Dr. Dave opined that Plaintiff's multiple myalgias and other symptoms would cause mild to moderate limitations in "activities requiring severe physical exertion, such as lifting, carrying, pushing or pulling heavy objects." Tr.

430. The ALJ found Dr. Dave's medical opinion[3] "generally persuasive" because the opinion was

supported by Dr. Dave's examination. Tr. 26; *see* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)

("The more relevant the objective medical evidence and supporting explanations presented by a

medical source are to support his or her medical opinion(s) . . . the more persuasive the medical

opinions . . . will be."). Indeed, Dr. Dave's finding of mild to moderate limitations was supported

by the examination findings that, *inter alia*, Plaintiff could get on and off the examination table

independently, had no difficulty rising from her chair, had full strength in her upper and lower

extremities, and had limited range of lumbar motion but full range of motion in her cervical spine,

elbows, wrists, hands, and right shoulder. Tr. 23, 427-429.

However, the ALJ found that evidence received at the hearing level, including hearing

testimony, supported the need for postural and environmental limitations. Tr. 26, 55, 317; *see* 20

C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion . . . is with

the evidence from other medical sources and nonmedical sources in the claim, the more persuasive

the medical opinion . . . will be."). These additional postural and environmental limitations were

also consistent with Plaintiff's morbid obesity, which could cause limitations in climbing,

balancing, stooping, kneeling, crouching, and crawling; contribute to decreased range of motion

of the spine and extremities, and affect the ability to handle hazards, extreme humidity, and other

environmental factors. Tr. 24; *see* SSR 19-2p.

Plaintiff also argues that the physical RFC finding lacked substantial evidentiary support

because the ALJ found other opinions and findings in the record not persuasive. *See* ECF No. 8-1

at 10-14 (citing Tr. 26-27). Contrary to Plaintiff's argument, however, "the ALJ's RFC conclusion

---

[3] The ALJ's decision inadvertently identified Dr. Dave's opinion as Dr. Ransom's opinion; however, since Dr. Dave
conducted a physical examination and Dr. Ransom conducted a psychological evaluation, it is clear from the context
that the ALJ was discussing Dr. Dave's physical opinion, not Dr. Ransom's psychological opinion. *See* Tr. 26.

need not perfectly correspond with any single medical opinion in the records, because the ALJ is entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citing *Matta*, 508 F. App'x at 56) (internal quotation marks omitted). The regulations that became effective March 27, 2017 explicitly state that the ALJ will not defer or give controlling weight to any medical opinions. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Furthermore, a formal medical opinion is not necessary where, as here, the record provides sufficient evidence from which the ALJ can forge a well-supported RFC. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (describing five categories of evidence considered by the ALJ in assessing a disability claim).

Finally, Plaintiff contends that the ALJ should not have relied on Dr. Dave's opinion because it predated Plaintiff's two varicose vein surgeries in May 2018 and August 2018, , and a February 2019 ultrasound showing hepatomegaly with fatty infiltration, and was therefore stale. *See* ECF No. 8-1 at 18 (citing Tr. 566-75, 630-31, 664-74). Plaintiff's argument fails. Later medical evidence does not render an opinion stale, as long as the "additional evidence does not raise doubts as to the reliability of [the] opinion." *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order); *see Steve P. v. Comm'r of Soc. Sec.*, 2021 WL 307566, at *5-7 (W.D.N.Y. 2021) (rejecting claimant's staleness argument where there was no change in symptoms during the period between the medical source's opinion and a surgery, and his condition improved slightly following surgery).

Here, Plaintiff, who bears the burden of showing that her RFC was more restrictive than the ALJ found, has not shown that the vein surgeries and/or hepatomegaly caused functional deterioration after Dr. Dave's examination, such that she could no longer perform the RFC for sedentary work with certain postural and environmental restrictions, as found by the ALJ. *See*

*Poupore*, 566 F.3d at 306. To the contrary, the record reflects that the vein surgeries reduced Plaintiff's leg pain. Tr. 23, 611. Moreover, an abdominal CT scan performed on January 5, 2020, almost a year after the hepatomegaly was detected, showed an unremarkable liver with no mass, suggesting that the hepatomegaly had resolved. Tr. 724.

Based on the foregoing, substantial evidence, including the medical treatment notes, Plaintiff's stated activities of daily living, and, to some extent, Dr. Dave's opinion, supported the ALJ's physical RFC finding. The ALJ properly drew on multiple evidentiary sources to arrive at the physical RFC finding and reasonably declined to mirror any one medical opinion. As previously noted, Plaintiff bears the ultimate burden of proving that she was more limited than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). Accordingly, the Court finds no error.

Plaintiff also argues that the ALJ's mental RFC finding was not supported by substantial evidence because it did not rely on a medical opinion. *See* ECF No. 8-1 at 9-16. Plaintiff further argues that the ALJ improperly substituted his own judgment for competent medical opinions and, therefore, created a gap in the record. *See id*. As previously stated, Plaintiff's argument has merit. Unlike the physical RFC finding where the ALJ relied on multiple evidentiary sources, including a consultative opinion which the ALJ found generally persuasive, the mental RFC finding is not so supported. The ALJ rejected all of the opinion evidence regarding Plaintiff's mental functioning and, therefore, lacked any guidance from a medical professional to ensure that the RFC finding adequately accounted for Plaintiff's mental limitations. *Hopper v. Berryhill*, 2017 WL 5712307 at *3 (W.D.N.Y. 2017) (An ALJ, who is not a medical professional, cannot come to a "highly

17

specific" determination of Plaintiff's abilities without guidance from a medical opinion) (internal citations omitted).

On March 30, 2018, Plaintiff underwent a psychiatric examination by Christine Ransom, Ph.D. ("Dr. Ransom"). Tr. 420-23. The ALJ found Dr. Ransom's opinion that Plaintiff would only have mild episodic psychiatric limitations that would not significantly interfere with Plaintiff's ability to function on a daily basis, "not persuasive." Although the ALJ noted that Dr. Ransom has a degree of specialization in the area related to her opinion, as well as an examining relationship with Plaintiff, he found that the opinion was not consistent with the subsequent record of outpatient treatment and Plaintiff's testimony, which the ALJ found supported greater limitations. Tr. 26.

The ALJ also considered a September 27, 2019 opinion from mental health counselor Maria Guzman, MSW ("Ms. Guzman), at BestSelf Behavioral Health, indicating that Plaintiff had been diagnosed with major depressive disorder and PTSD and had been receiving services through BestSelf since January 15, 2018. Tr. 26, 435-36. Ms. Guzman opined that Plaintiff had "mental health conditions that interfered with her ability to do things that an individual without these conditions is able to do effectively" and physical conditions "that interfere with her ability to complete certain tasks due to constantly feeling tired and in pain." Tr. 435. Plaintiff was to be excused from school until her symptoms decreased, and she would be seen weekly *Id*.

The ALJ found Ms. Guzman's opinion "not persuasive," stating that the opinion was too vague to be of any value, but he then concluded that the ultimate RFC adequately accounted for Plaintiff's mental limitations. Tr. 26. However, such a conclusion is beyond the ALJ's capabilities. *See Patricia L. v. Saul*, No. 20-CV-6173L, 2021 WL 1845914, at *4 (W.D.N.Y. Apr. 21, 2021) (Even assuming the ALJ correctly evaluated the medical record in rejecting the bulk of limitations asserted, he opened a gap in the record by doing so.); *Falcon v. Apfel*, 88 F.Supp.2d 87, 90

(W.D.N.Y. 2000) (ALJ should have sought a conclusive determination from a medical consultant); *Smith v. Commissioner*, 337 F.Supp. 3d 216, 226 (W.D.N.Y. 2018) (Where the ALJ rejects all medical opinion evidence and the record "does not contain a useful assessment of [p]laintiff's limitations" remand for further development is appropriate.).

Here, the ALJ found that Plaintiff had the severe mental impairment of depression, concluding that she had moderate limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing herself. Tr. 20, 21. However, other than the opinions of Dr. Ransom and Ms. Guzman, both of which the ALJ found not persuasive, the record contained no opinion evidence regarding Plaintiff's functional limitations caused by her mental impairments. Nor did the ALJ provide any explanation to tether these limitations to the opinion evidence or to any statements from Plaintiff. *Jordan v. Berryhill*, 1:17-CV-00509 (JJM), 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018) (Without "some explanation" from the ALJ "as to the tether between [the] RFC and the non-stale medical opinions or statements from plaintiff, the RFC appears to be based upon [the ALJ's] lay analysis of plaintiff's limitations, which is not permitted and requires remand."). Such is the case here.

In the context of mental health, the ALJ cannot render a "common sense judgment" as to a plaintiff's functional capacity without a medical opinion, given the highly complex and individual nature of such impairments. *James R. v. Comm'r of Soc. Sec.*, No. 18-CV-06497-FPG, 2021 WL 3361161, at *3 (W.D.N.Y. Aug. 3, 2021) (citing *Lilley v. Berryhill*, 307 F.Supp.3d 157, 161 (W.D.N.Y. 2018); *see also Stein v. Colvin*, No. 18-CV-6753-FPG, 2016 WL 7334760, at *4 (W.D.N.Y. Dec. 19, 2016) (remanding where the ALJ provided an RFC after discounting the only medical opinion of record and plaintiff had longstanding mental impairments including anxiety

and depression such that a common sense judgment was inappropriate). Furthermore, an ALJ may not come to a "common sense" RFC when they acknowledge that the Plaintiff's mental symptoms were sometimes "moderate." *Jason C. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00702 EAW, 2021 WL 4348742, at *4 (W.D.N.Y. Sept. 24, 2021).

On this record, the ALJ was not permitted to rely on his own lay assessment of the medical evidence to assess Plaintiff's mental RFC. Instead, there was a gap in the record that the ALJ was required to fill. *See Lilley*, 307 F. Supp. 3d at 160 ("Stated simply, the record lacks a useful medical opinion by any treating or examining source that addresses whether and to what extent plaintiff's mental impairments impact her ability to perform work-related functions. As such, the ALJ was required to obtain a consultative examination and/or seek additional opinion evidence from plaintiff's treating physician.").

For these reasons, the Court finds that the ALJ's assessment of Plaintiff's mental RFC was not supported by substantial evidence, and further development of the record was necessary. Accordingly, remand of this matter for further administrative proceedings is required. *See Martin v. Berryhill*, No. 16-CV-6184-FPG, 2017 WL 1313837, at *1 (W.D.N.Y. Apr. 10, 2017)2017 WL 1313837, at *4 ("There were many avenues available to the ALJ to fill the gap in the record . . . ") (citing *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) ). The Commissioner on remand, "should employ whichever of these methods are appropriate to fully develop the record as to [Plaintiff's] RFC." *Martin*, 2017 WL 1313837, at *4.

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **GRANTED IN PART**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent

with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d

117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

      **IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE